UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 10-259-GWU

TERRI MADDIN, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

        Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.    At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.    If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In the Sixth Circuit, the Step Two severity regulation has been held to be a de minimis hurdle in the disability determination process.  Murphy v. Secretary of

Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

## DISCUSSION

The plaintiff, Terri Maddin, applied for DIB on August 2, 2006, alleging disability since October 31, 1999 due to migraine headaches, mental confusion, fatigue, and back pain, and other related problems. (Tr. 121). After reviewing the evidence and hearing the plaintiff's testimony, an Administrative Law Judge (ALJ) determined that, although Mrs. Maddin did not engage in substantial gainful activity from her alleged onset date through December 31, 2004, her Date Last Insured (DLI), there were no medical signs or laboratory findings during this period to substantiate the existence of a medically determinable impairment. (Tr. 36-8). Accordingly, she was not entitled to benefits. The Appeals Council declined to review, and this action followed.

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff argues that the ALJ erred in finding that she had no medically determinable impairment, and that her migraine headaches were not "severe." She also asserts that it was error to make no finding concerning the credibility of her

3

testimony, and to rely on the opinion of state agency physicians. All of these arguments are without merit.

The plaintiff testified at the administrative hearing that her "main" disability was migraine headaches (Tr. 6), but it appears that all of her problems were related to this condition (Tr. 7-19). Her fifteen-year-old daughter confirmed her testimony. (Tr. 21-3).

Medical records from the relevant period between the onset date of October 31, 1999 and the DLI of December 31, 2004 show that Mrs. Maddin requested headache medications from her gynecologist, Dr. Jerry A. Goodman, who prescribed the medication Maxalt for what he diagnosed as "menstrual migraine." (E.g., Tr. 213, 218-19). There was a letter from Dr. Jonathan A. Bernstein, discussing an examination of February 17, 2004, for evaluation of allergies which caused the plaintiff to develop severe headaches by her account. (Tr. 260). Her physical examination was essentially normal. Skin testing showed allergies to red mulberry trees, grasses, "and to a lesser extent ragweed." (Tr. 260, 265). Dr. Bernstein opined that she had a diagnosis consistent with "idiopathic environmental intolerance/vasomotor nonallergic rhinitis," recommended avoidance of these irritants, and prescribed a nasal spray, Astelin. (Tr. 260). There were records from an illegible source at First Physicians Group indicating that Mrs. Maddin was seen for an allergic reaction to niacin, which she apparently was taking for migraines. (Tr. 272). The physician noted that she was alleging 6 to 12 migraines a month, which

4

usually had an allergic trigger, and he prescribed Singulair, Topamax, and Relpax. (Id.)

A letter from Lawrence Mikkelson, a chiropractor and thus not an acceptable medical source under 20 C.F.R. § 404.1513, is dated September, 2006, and states that he had treated Mrs. Maddin regularly beginning in November, 2000, with a diagnosis of cervicalgia and headache. (Tr. 175). She was treated with chiropractic manipulation, which gave only temporary relief. (Id.). Her prognosis was considered "poor." (Id.).

Mrs. Maddin was evaluated by Dr. Maureen Li in the spring of 2005, shortly after the DLI. She reported having headaches since childhood, and allergy shots had not been effective. If she did not use the medication Relpax, her pain was 10 on a scale of 1 to 10, but with Relpax they were a 2. (Tr. 284). Her neurological examination was normal (Tr. 285), although Dr. Li diagnosed migraine headaches (Tr. 286). An MRI of the brain showed mild to moderate paranasal sinus disease, but was otherwise normal. (Tr. 278, 289). She reported on a followup visit that the use of Elavil had made her headaches better overall, and Dr. Li advised her to continue taking it. (Tr. 276).

Dr. Vincent Martin evaluated the plaintiff's headaches on referral from Dr. Li in July, 2005, at which time she denied any change in the frequently of severity of her headaches over the previous six months, in contrast to her recent statement to Dr. Li. (Tr. 292). Dr. Martin's examination was normal, and, noting that she was

taking 22 Relpax tablets per month, diagnosed "analgesic rebound headaches" in addition to migraine headaches without aura. (Id.). She was advised to gradually reduce use of analgesics, and was offered other medications, but declined. (Id.).

Other medical evidence is from well after the DLI. A nurse-practitioner, also a non-acceptable source under the regulations, opined in March, 2007 that Mrs. Maddin's headaches might affect her employment (Tr. 365) but this statement was both equivocal and not related to the relevant period. Another MRI in 2009 was normal. (Tr. 453).

State agency reviewing psychologists and physicians found that there was insufficient evidence prior to the DLI to determine the severity of the plaintiff's condition. (Tr. 230, 244, 258).

Therefore, it appears that no acceptable medical source ever provided any functional restrictions. The plaintiff had a diagnosis of migraine headaches, but this was evidently based on her subjective complaints, since there was no diagnostic testing that showed anything other than sinus disease. As the defendant points out, the mere diagnosis of a condition says nothing about its severity under the regulations, and it is still the plaintiff's burden to show functional limitations resulting from the condition. See, e.g., Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988); see also 20 C.F.R. §§ 404.1520; 404.1521. Not only was there no medical

evidence of a work-related limitation of functioning, there was no objective evidence of an underlying condition which would account for the plaintiff's complaints.[1]

Moreover, it is important to keep in mind that Social Security Ruling (SSR) 96-7p emphasizes that "[n]o symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable impairment(s) that could reasonably be expected to produce the symptoms." Only once such a finding is made is the ALJ required "to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects." Id. at *1. In the absence of any objective medical findings to support the plaintiff's description of her migraines, it was not error for the ALJ to fail to discuss her credibility.

---

[1] The plaintiff cites certain district court opinions for the proposition that there are no imaging techniques or laboratory tests which can detect migraine headaches. Thompson v. Barnhart, 493 F.Supp.2d 1206 (S.D. Ala. 2007); Ortega v. Chates, 933 F.Supp. 1071 (S.D. Fla. 1996). The Sixth Circuit has recognized that "clinical and laboratory data may consist of the diagnosis and observations of [trained] professionals" in diagnosing mental disorders. Blankenship v. Bowen, 874 F.2d 1116, 1121 (6th Cir. 1989) (citations omitted). It could be argued by analogy that migraine headaches should be treated the same way. However, assuming for the sake of argument that the ALJ erred in finding no "severe" impairment, the error was harmless, because the plaintiff still has not presented evidence of concrete functional restrictions during the relevant period. In both Thompson and Ortega, the plaintiff's treating physician had asserted that the plaintiff was unable to work due to her migraines. 493 F.Supp.2d at 1212; 933 F.Supp at 1075.

Nor was it error to rely on the evidence of state agency physicians. In fact, their opinions must be taken into account by the ALJ, see 20 C.F.R. § 404.1527(f)(2)(i), and since there was no countervailing evidence from an acceptable medical source, the ALJ could reasonably have relied on their conclusions.

The decision will be affirmed.

This the 26th day of July, 2011.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**